CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
DEC 30 2010
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| BOBBY L. ROACH, | ) |
| | ) Civil Action No. 5:10CV00050 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| Social Security, | ) By: Honorable Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" as to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Bobby L. Roach, was born on September 30, 1960, and eventually reached the twelfth grade in school. Mr. Roach has been employed as a lawn maintenance worker, concrete finisher, and machine operator. He last worked on a regular basis in 2001. On August 11, 2006, Mr. Roach filed an application for a period of disability and disability insurance benefits. An earlier application for such benefits had proven unsuccessful. In filing his second claim, plaintiff alleged that he became disabled for all forms of substantial gainful employment on May 18, 2001 due to chronic back pain, leg pain, high blood pressure, acid reflux, nerve problems, and depression. Mr. Roach now maintains that he has remained disabled to the present time. The record reveals that

plaintiff met the insured status requirements of the Act through the fourth quarter of 2006, but not thereafter. See gen., 42 U.S.C. §§ 416(i) and 423(a). Consequently, Mr. Roach is entitled to disability insurance benefits only if he has established that he became disabled for all forms of substantial gainful employment on or before December 31, 2006. See gen., 42 U.S.C. § 423(a).

Mr. Roach's claim was denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated April 25, 2008, the Law Judge also determined that plaintiff was not disabled prior to the termination of insured status. The Law Judge found that plaintiff suffered from severe impairments on the bases of back disorder, obesity, depression, and adjustment disorder. Because of these conditions, the Law Judge ruled that Mr. Roach was disabled for his past relevant work roles. However, the Law Judge ruled that plaintiff retained sufficient functional capacity for a limited range of sedentary exertion. The Law Judge assessed Mr. Roach's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of unskilled sedentary work. Specifically, he can lift and carry up to 10 pounds occasionally and less than 10 pounds frequently, can stand/walk for about 2 hours in an 8 hour day, can sit for about 6 hours in an 8 hour day, with the option to periodically alternate between sitting and standing as needed and can push and pull up to 10 pounds occasionally and less than 10 pounds frequently with his upper and lower extremities. However, he is limited to jobs that do not require any climbing of ladders/ropes/scaffolds or more than occasional climbing of stairs and ramps, balancing, stooping, kneeling crouching and crawling [footnote omitted] and that allow him to avoid even moderate exposure to workplace hazards, such as moving machine parts and unprotected heights.

(TR 11). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge found that

2

Mr. Roach retained sufficient functional capacity to perform several specific sedentary work roles that exist in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Mr. Roach was not disabled, and that he is not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Roach has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. The court will assume for purposes of this opinion that the record supports the Law Judge's finding that plaintiff retained sufficient *physical* capacity for a limited range of sedentary exertion.[1] However, the court does not

---

[1] There is a dispute in the record as to whether plaintiff's residual back problems could be expected to produce pain of disabling severity, as described by Mr. Roach in his testimony. In such circumstances, the court notes that it is often helpful for the Commissioner to receive testimony at the administrative hearing from a medical advisor as to whether the claimant's physical impairments could be expected to produce disabling pain. See gen., Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). The court does not find it necessary to consider this question in detail at the present time, inasmuch as the court believes that the Administrative Law Judge failed to properly consider plaintiff's nonexertional impairments caused by his depression, anxiety, and adjustment disorder.

3

believe that the Law Judge's reliance on the testimony of the vocational expert is supported by substantial evidence. As previously noted, the Law Judge specifically found that Mr. Roach suffers severe impairments, including depression and an adjustment disorder. Yet, in his hypothetical question to the vocational expert, the Law Judge did not include any functional limitations which are associated with these nonexertional impairments. Accordingly, the court finds "good cause" for remand of this case to the Commissioner for further development and consideration.

At the outset, the court notes that, by regulatory definition, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a). Under 20 C.F.R. § 404.1521(b), basic work activities are characterized as follows:

> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

Accordingly, since Mr. Roach experiences severe impairments on the bases of depression and adjustment disorder, his ability to perform basic work activities must be deemed to be impacted by such impairments.

In the instant case, there can be no question but that plaintiff experiences severe impairments on the bases of depression, anxiety, and adjustment disorder. It seems that Mr. Roach suffered a

severe, work-related back injury on May 18, 2001, his alleged date of disability onset. Without going into great detail, the court notes that plaintiff has undergone extensive medical treatment, including surgical procedures, in an attempt to remedy his back condition. His medical treatment has not been totally successful. During the course of treatment, plaintiff's emotional condition has been evaluated by several doctors and psychologists.

On May 15, 2002, Dr. Laury L. Goolsby, a clinical psychologist, reported as follows:

> In summary, Mr. Roach presents as moderately depressed, hopeless, and frustrated by his experience with his injury and the medical system. Specifically he does not believe that the doctors are listing [sic] to him and his pain is not being adequately addressed. Indeed, he continues to take more Tylenol than it is safe for anyone, and especially given his medical history, because he feels no one will give him medications because of his alcoholic history. This needs to be addressed by the medical professionals working with him. He was also encouraged to contact Dr. Deputy about a possible increase in his antidepressant medication. Mr. Roach has a difficult time communicating and also feels that no one is communicating well with him. Those working with him will want to ask questions directly and provide more support and direction in terms of his physical and occupational recovery. He is at a loss as to what kind of work he would do besides return to concrete work, which seems contraindicated given his physical condition. Therefore he was referred to the Department of Rehabilitative Services and seemed quite appreciative and excited about the possibility of having someone help him figure out what he needs to do.

(TR 284).

Another psychologist, Dr. Douglas E. DeGood, saw Mr. Roach on October 6, 2003, in an effort to assess plaintiff's surgical candidacy. Dr. DeGood noted that plaintiff was experiencing depression as a result of lack of progress in his treatment. The psychologist diagnosed moderately severe depression and adjustment disorder with anxiety and depression. (TR 726). Dr. DeGood continued to see Mr. Roach for several months. On February 3, 2004, Dr. DeGood reported that since the injury, plaintiff had been immobilized by severe pain and had become very depressed. While the psychologist felt that plaintiff's primary disability was physical, he noted that Mr. Roach's

attention span, concentration, persistence, and task completion are relatively poor as a result of pain and medication. (TR 719). Dr. Crystl D. Willison, plaintiff's neurosurgeon, reported on August 17, 2005, that Mr. Roach's fusion surgery had not been successful, and that he continued to be inhibited by depression. (TR 523). Several months later, Dr. Willison opined that Mr. Roach is totally disabled due to chronic pain and depression. (TR 516).

Dr. A. John Kalil, a psychologist, evaluated Mr. Roach at the behest of the Disability Determination Services. Dr. Kalil did not actually examine plaintiff, and he based his impressions on a record review. While Dr. Kalil did not believe that Mr. Roach was disabled for all forms of work, he diagnosed recurrent, severe depression without psychotic features. (TR 503). The psychologist opined that plaintiff suffers from moderate limitations in his ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular work attendance, and complete a normal work day and work week without interruptions from psychologically based symptoms. (TR 501-02).

Dr. G. Preston Grice, a pain specialist, submitted a report on April 24, 2007. Dr. Grice summarized his impressions as follows:

> Now to cut to the chase of this letter, I am going to make the statement that I will certainly stand behind that at this point I have determined that Mr. Roach is permanently and totally disabled based on his underlying medical issues. These not only include the problems with his back and radicular leg pain, but also significantly will include problems related to his psychiatric problems (depression) stemming from his injury. I honestly do not see him ever being able to adequately participate in any type of employment again.

(TR 665).

Dr. Kimberly Salata completed an independent medical evaluation on May 15, 2007. Dr. Salata assessed Mr. Roach's work capacity as follows:

6

> While there are no physical medical contradictions to sedentary/light duty, the likelihood of this patient successfully performing any vocational activity is extraordinarily low. In addition to his chronic pain, the patient has significant depression which impacts his activity level. He is severely deconditioned, as the fear of "being caught" doing any activity has resulted in him doing no activity. His sleep is disrupted and he is chronically sleep deprived. In combination with high doses of narcotics he has frequent episodes of suddenly falling asleep which precludes him from driving or operating any equipment. He does not currently possess skills for any job other than manual labor and it is unlikely he could successfully complete vocational retraining with his current cognitive status. He currently cannot sit, stand or walk for greater than 30 minutes at a time. All of these factors combine to make any employment unlikely.

(TR 751).

Dr. DeGood, the psychologist, saw Mr. Roach again on June 18, 2007. On this occasion, Dr. DeGood undertook to evaluate plaintiff as a candidate for an implanted stimulator. Dr. DeGood considered plaintiff's depressive disorder to be of mild intensity, though he noted that Mr. Roach has difficulty maintaining attention due to pain, medication, and depression. (TR 784).

Robert Jackson testified at the administrative hearing in this case as a vocational expert. The Law Judge asked Mr. Jackson a series of hypothetical questions. In terms of residual functional capacity for sedentary exertion, which the Law Judge later found to be plaintiff's highest exertional level, the transcript of the hearing reveals the following exchange between the Law Judge and the vocational expert:

> Q[ALJ]    Let's assume we're dealing with a person who can do sedentary work, lift, carry ten pounds occasionally, less than ten pounds frequently, stand or walk about two hours in an eight hour day, sit about six hours in an eight hour day, push, pull unlimited except for the lifting and carrying restrictions, no climbing ladders, ropes or scaffold, other postural activities occasional. But isn't it true, Mr. Jackson, that postural activities in general do not have an impact on the sedentary job base?
>
> A[VE]    It is true, Your Honor.

7

| Q | Okay. And we're going to avoid even moderate exposure to workplace hazards. And I gather this person cannot do the Claimant's past work. Is that correct? |
|---|---|
| A | That is correct. |
| Q | And let's further assume the person is the same age as the Claimant, has the same educational background and past work experience. Could such a person do other jobs that exist in significant numbers in the regional or national economy? |
| A | Yes, Your Honor. |
| Q | Could you identify the jobs, please. |
| A | Telephone order clerk, sedentary, unskilled. In Virginia there are over 9,000 positions, in the U.S. over 264,000. |
| Q | That's telephone – |
| A | Order clerk. |
| Q | – order clerk? And that's 264,000? |
| A | Yes, sir. |
| Q | Okay. |
| A | Sedentary cashier. In Virginia there are over 3800 positions. In the U.S. over 145,000. General production worker found at census code 896 – it's multiple DOT numbers. |
| Q | General production – |
| A | Worker. |
| Q | Okay. |
| A | In Virginia there are over 1500 positions, and in the U.S. over 53,000. |

(TR 63-64). The vocational expert went on to indicate that the positions of cashier and telephone order clerk would permit a sit/stand option. (TR 65). While the vocational expert felt that a lifting

8

limitation of up to five pounds would eliminate the job of general production worker, Mr. Jackson indicated that plaintiff could still be a survey worker or telephone interviewer with that additional limitation. (TR 65).

In summary, despite having found the existence of severe impairments on the bases of depression and adjustment disorder, the Law Judge included no vocational restrictions in his hypothetical questions to the vocational expert which are reasonably associated with such problems. As noted above, almost all of the doctors who attempted to assess plaintiff's residual functional capacity noted some restrictions associated with his depression and/or use of pain medication. Several of the physicians opined that plaintiff's combination of physical and emotional impairments renders him totally disabled for all forms of work. Even Dr. Kalil, the nonexamining state agency psychologist, noted moderate limitations in several key work-related emotional components, including attention span, concentration capacity, and ability to work on a sustained basis. In the court's view, if the Law Judge considered plaintiff's depression and adjustment disorder to be severe, it was error not to include appropriate limitations in the hypothetical questions to the vocational expert.

In Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. (citations omitted).

Inasmuch as the hypothetical questioning of the vocational expert in this case did not include nonexertional limitations associated with the severe impairments found to exist by the Administrative Law Judge, the court must conclude that the Law Judge's reliance on the vocational expert's testimony in finding residual functional capacity for alternate work roles is not supported by substantial evidence. The court believes that it is necessary to remand this case so that proper and comprehensive hypothetical questions can be put to a qualified vocational expert. It can then be determined whether plaintiff can perform alternate work roles existing at the sedentary level, given his particular combination of exertional and nonexertional limitations, as well as his age, education, and past work experience. See gen., 20 C.F.R. § 404.1520(g).

For the reasons stated, the court finds that plaintiff has established "good cause" for remand of his case to the Commissioner for further development and consideration. See 42 U.S.C. § 405(g). An appropriate order of remand will be entered this day. Upon remand, if the Commissioner is unable to decide this case in plaintiff's favor based on the existing record, the Commissioner shall conduct a new administrative hearing, at which both sides will be allowed to present additional evidence and argument.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 29th day of December, 2010.

_____
Chief United States District Judge